1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Brittany S. Scott (State Bar No. 327132)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          bscott@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| BASHEER BERGUS, individually and on behalf of all others similarly situated, | Case No.   21-1954 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| BEYONDGREEN BIOTECH, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

1    Plaintiff Basheer Bergus ("Plaintiff"), individually and on behalf of all others

2  similarly situated, by and through his attorneys, makes the following allegations

3  pursuant to the investigation of his counsel and based upon information and belief,

4  except as to allegations specifically pertaining to himself and his counsel, which are

5  based on personal knowledge, against Defendant beyondGREEN Biotech, Inc.

6  ("Defendant").

7                            **<u>NATURE OF THE ACTION</u>**

8    1.    This is a class action lawsuit on behalf of purchasers of Defendant's

9  product, beyondGREEN Compostable Dog Waste Bags (the "Product"), in the United

10  States.

11    2.    Defendant manufactures and sells a number of pet waste products under

12  the "beyondGREEN" label.  Defendant sells these products throughout the United

13  States, including in the State of New York.

14    3.    Defendant holds itself out as an environmentally friendly brand.

15    4.    The Product comes in four different sizes:  45 bags, 90 bags, and 120

16  bags, and 240 bags.

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                          1

1    5.    On the front panel of the packaging of each version of the Product,

2  Defendant represents that the Product is "Compostable" and "Certified

3  Compostable":

4
5
6
7
8
9
10

11
12
13
14
15
16
17
18
19
20

21    6.    Likewise, on the back panel on the 45-count and 120-count versions of

22  the Product, and on the side panel of the 90-count version of the Product, Defendant

23  represents that the Product is "certified compostable and will start to decompose

24  within 3 to 6 months upon disposal in an aerobic or anaerobic environment":

25  //

26  //

27  //

28  //

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    7.    In sum, on each version of the Product, Defendant represents that the

18  Product is capable of being composted.  Reasonable consumers reviewing the

19  Product's packaging would believe the same based on Defendant's representations.

20    8.    Problematically for consumers, these claims are false and misleading.

21  Indeed, the Federal Trade Commission ("FTC") has stated that "compostable" claims

22  on dog waste products are "generally untrue."[1]

23    9.    As the FTC notes:

24    consumers generally think that unqualified "compostable claims"
25    mean that a product will safely break down at the same rate as natural

26  ───────────────
    [1] *FTC Staff Warns Marketers and Sellers of Dog Waste Bags That Their*
27  *Biodegradable and Compostable Claims May Be Deceptive*, Feb. 3, 2015, https://
    www.ftc.gov/news-events/press-releases/2015/02/ftc-staff-warns-marketers-sellers-
28  dog-waste-bags-their.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    3

products, like leaves and grass clippings, in their home compost pile. If marketers disclose that a product will only compost in commercial or municipal facilities, consumers think that those facilities are generally available in their area. **However, dog waste is generally not safe to compost at home, and very few facilities accept this waste**.[2]

10.    More specifically, dog waste cannot be composted because it can contain harmful contaminants (*e.g.*, *E. Coli*). Even in backyard composting, the U.S. Environmental Protection Agency cautions that dog waste can contain harmful parasites, bacteria, viruses, or pathogens.

11.    As environmental regulatory bodies have noted:
Animal waste contains two main types of pollutants that harm local waters: nutrients and pathogens. When this waste ends up in water bodies, it decomposes, releasing nutrients that cause excessive growth of algae and weeds. This makes the water murky, green, smelly, and even unusable for swimming, boating, or fishing. The pathogens, disease-causing bacteria, and viruses can also make local waters unswimmable and unfishable, and have caused severe illness in humans.

As you can see, **animal waste doesn't simply decompose**.[3]

12.    On top of the foregoing, industrial composting of dog waste is **generally not available in the United States**.

13.    Defendant admits its knowledge of these facts on its website.[4] Yet, rather than disclaim this fact to consumers on the Product's packaging, Defendant offers a different solution. Specifically, consumers can purchase Defendant's "All-

---

[2] *Id.* (emphasis added).

[3] DO YOU SCOOP THE POOP?, https://cfpub.epa.gov/npstbx/files/Pet%20care%20fact%20sheet.pdf (emphasis added).

[4] BEYONDGREEN DOG WASTE BAGS, https://byndgrn.com/collections/dog-waste-bags ("Many mentions state that pet waste cannot be composted or may not be accepted by Industrial Composting facilities.").

Electric Pet Waste and Organic Waste Composter," which costs **four hundred fifty dollars ($450).**[5]

14. In other words, Defendant represents the Product as capable of being composted, when the Product in fact cannot be composted. And, if consumers actually want to compost the Product, their only real option is to pay Defendant nearly $500 for that privilege.

15. The FTC has declared practices like Defendant's to be deceptive. 16 C.F.R. § 260.7(a) ("It is deceptive to misrepresent, directly or by implication, that a product or package is compostable."). Per federal regulations, "[t]o avoid deception about the limited availability of municipal or institutional composting facilities, a marketer should clearly and prominently qualify compostable claims if such facilities are not available to a substantial majority of consumers or communities where the item is sold." 16 C.F.R. § 260.7(d).

16. These federal regulations go on to give examples of deceptive conduct, including but not limited to the following:

> **Example 2:**
> A garden center sells grass clipping bags labeled as "Compostable in California Municipal Yard Trimmings Composting Facilities." When the bags break down, however, they release toxins into the compost. **The claim is deceptive if the presence of these toxins prevents the compost from being usable.**
>
> …
>
> **Example 4:**
> Nationally marketed lawn and leaf bags state "compostable" on each bag. The bags also feature text disclosing that the bag is not designed for use in home compost piles. Yard trimmings programs in many communities compost these bags, but such programs are not available to a substantial majority of consumers or communities where the bag is sold. **The claim is deceptive because it likely conveys that composting facilities are available to a substantial majority of consumers or communities.** To avoid deception, the marketer should

---

[5] BEYONDGREEN ALL-ELECTRIC PET WASTE AND ORGANIC WASTE COMPOSTER, https://byndgrn.com/products/pet-waste-composter

clearly and prominently indicate the limited availability of such programs.

16 C.F.R. § 260.7(d) (emphasis added).

17.   These examples are analogous to the issue here with Defendant's Product, and illustrate why the "compostable" and "certified compostable" claims are deceptive.[6]  Like Example 2, the inability to compost dog waste due to the presence of parasites, bacteria, viruses, and pathogens prevents compost from being usable. And like Example 4, facilities that can compost dog waste are not available to most (if not all) U.S. consumers, and Defendant does not clarify this on the Product's packaging.  Accordingly, the "compostable" and "certified compostable" claims are false and misleading because the Product is not capable of being composted.

18.   The "compostable" and "certified compostable" claims are an example of "greenwashing."  "Greenwashing is the process of conveying a false impression or providing misleading information about how a company's products are more environmentally sound … [C]ompanies engaged in greenwashing typically exaggerate their claims or the benefits in an attempt to mislead consumers."[7]

19.   Companies make greenwashing claims to "capitalize on the growing demand for environmentally sound products."[8]  For example, over the past five years, there has been a 71% rise in online searches for sustainable goods.[9]

20.   Further, according to a study by IBM and the National Retail Federation, nearly 70% of consumers in the United States and Canada think it is important that a

---

[6] To be clear, Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that his state-law claims do not impose any additional obligations on Defendant, beyond what is already required of them under federal law.

[7] GREENWASHING, INVESTOPEDIA, https://www.investopedia.com/terms/g/greenwashing.asp.

[8] Id.

[9] Cristianne Close, The global eco-wakening: how consumers are driving sustainability, World Economic Forum, May 18, 2021, https://www.weforum.org/agenda/2021/05/eco-wakening-consumers-driving-sustainability/.

1  brand is sustainable or eco-friendly.  The same study also found that 70% of

2  respondents who valued sustainability would be willing to pay, on average, 35%

3  more for eco-friendly brands.[10]

4      21.    In other words, modern consumers purchase products that claim to be

5  environmentally friendly, and are even willing to pay more for such products over

6  their non-sustainable competitors.

7      22.    Indeed, Defendant capitalizes on this market, and charges more for its

8  dog waste bags that it claims are "compostable" or "certified compostable," as

9  compared to those that lack such claims:

| Brand/Product | Quantity | Price | Price Per Bag[11] |
|---|---|---|---|
| beyondGREEN Dog Waste Bags[12] | 8 Folded Rolls – 120 Bags | $8.99 | $0.12 |
| Earth Rated Unscented Bag[13] | 120 Bags on 8 Refill Rolls | $6.99 | $0.06 |

18      23.    In short, Defendant represents that the Product is "compostable" and

19  "certified compostable" and charges a price premium for the Product based on those

20  representations.  But those claims are false; dog waste is too dangerous to compost,

21  and there are few – if any – facilities in the United States that compost dog waste.

22  Accordingly, the "certified compostable" claim is false and misleading because the

[10] Dinara Bekmagambetova, Two-Thirds of North Americans Prefer Eco-Friendly Brands, Study Finds, Barron's, Jan. 10, 2020, https://www.barrons.com/articles/two-thirds-of-north-americans-prefer-eco-friendly-brands-study-finds-51578661728.

[11] Calculated by dividing the total price of the product by the number of bags in the package.

[12] https://byndgrn.com/collections/dog-waste-bags/products/dog-poop-bags-120.

[13] https://earthrated.com/en/product/120-poop-bags-on-refill-rolls-unscented/.

1   Product is not capable of being composted, and consumers would not have purchased

2   the Product—or paid substantially less for it—had they known the certified

3   compostable claim was not true.

4        24.    Plaintiff is a purchaser of the Product who asserts claims on behalf of

5   himself and similarly situated purchasers of the Product for (i) violation of New York

6   General Business Law ("GBL") § 349, (ii) violation of GBL § 350, (iii) breach of

7   express warranty, (iv) breach of implied warranty, (v) violation of the Magnuson-

8   Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, (vi) unjust enrichment,

9   (vii) negligent misrepresentation, and (viii) fraud.

10   **THE PARTIES**

11        25.    Plaintiff Basheer Bergus is a resident of Broome County, New York who

12   has an intent to remain there, and is therefore a domiciliary of New York.  In or about

13   May 2021, Plaintiff purchased several packages of the 240-count version of the

14   Product from PetSmart, and paid $27.99 per Product.  Prior to his purchase of the

15   Product, Plaintiff reviewed the product's labeling and packaging and saw that the

16   Product was labeled and marketed as "compostable" and "certified compostable."  In

17   purchasing the Product, Plaintiff relied on Defendant's representations that the

18   Product was "compostable" and "certified compostable."  Plaintiff saw these

19   representations prior to, and at the time of purchase, and understood them as

20   representations and warranties that the Product was "compostable" and "certified

21   compostable" (*i.e.*, capable of being composted).  Plaintiff relied on these

22   representations and warranties in deciding to purchase his Product.  Accordingly,

23   those representations and warranties were part of the basis of the bargain, in that he

24   would not have purchased his Product on the same terms had he known those

25   representations were not true, and that the Product was not capable of being

26   composted.  In making his purchase, Plaintiff paid an additional amount for the

27   Product above what he would have paid for a competitor with non-certified

28   compostable dog waste bags based on the Product's environmentally friendly claim.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED       8

1   Had Plaintiff known that the "compostable" and "certified compostable" claims were

2   false and misleading, Plaintiff would not have purchased the Product, or would have

3   paid substantially less for the Product.

4       26.    Defendant beyondGREEN Biotech, Inc. is a California corporation with

5   its principal place of business at 1202 E. Wakeham Avenue, Santa Ana California

6   92705.  Defendant markets, sells, and distributes the Product throughout the United

7   States, including in the State of New York.  Defendant manufactured, marketed, and

8   sold the Product during the class period.

9                         **JURISDICTION AND VENUE**

10       27.    This Court has subject matter jurisdiction pursuant to 28 U.S.C.

11   § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all

12   members of the proposed class are in excess of $5,000,000.00, exclusive of interest

13   and costs, and at least one member of the proposed class is citizen of state different

14   from at least one Defendant.

15       28.    This Court has personal jurisdiction over Defendant because Defendant

16   is incorporated and maintains its principal place of business in California.

17       29.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this

18   action because Defendant resides in this District.

19                     **CLASS ACTION ALLEGATIONS**

20       30.    Plaintiff seeks to represent a class of all persons in the United States who

21   purchased the Product (the "Class").  Excluded from the Class are governmental

22   entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers,

23   directors, and co-conspirators, and anyone who purchased the Product for resale.

24   Also excluded is any judicial officer presiding over this matter and the members of

25   their immediate families and judicial staff.

26       31.    Plaintiff also seeks to represent a subclass consisting of Class members

27   who purchased the Product in New York (the "Subclass").

28       32.    Subject to additional information obtained through further investigation

1    and discovery, the foregoing definition of the Class and Subclass may be expanded or
2    narrowed by amendment or amended complaint.

3          33.    **Numerosity.**  The members of the Class and Subclass are geographically
4    dispersed throughout the United States and are so numerous that individual joinder is
5    impracticable.  Upon information and belief, Plaintiff reasonably estimates that there
6    are thousands of members in the Class and Subclass.  Although the precise number of
7    Class members is unknown to Plaintiff, the true number of Class members is known
8    by Defendant and may be determined through discovery.  Class members may be
9    notified of the pendency of this action by mail and/or publication through the
10   distribution records of Defendant and third-party retailers and vendors.

11         34.    **Existence and predominance of common questions of law and fact.**
12   Common questions of law and fact exist as to all members of the Class and Subclass
13   and predominate over any questions affecting only individual Class members.  These
14   common legal and factual questions include, but are not limited to:

15              (a)    whether Defendant's labeling, marketing, and promotion
16                     of the Product is false and misleading;
17              (b)    whether   Defendant's   conduct   was   unfair   and/or
18                     deceptive; and
19              (c)    whether Plaintiff and the Class have sustained damages
20                     with respect to the common-law claims asserted, and if
21                     so, the proper measure of their damages.

22         35.    With respect to the Subclass, additional questions of law and fact
23   common to the members that predominate over questions that may affect individual
24   members include whether Defendant violated GBL §§ 349 and 350.

25         36.    **Typicality.**  The claims of the named Plaintiff are typical of the claims
26   of other members of the Class in that the named Plaintiff was exposed to Defendant's
27   false and misleading marketing, purchased the Product, and suffered a loss as a result
28   of that purchase.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                              10

37.    **Adequacy of Representation.**  Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

38.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation Of New York's Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

39.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

40.    Plaintiff brings this claim individually and on behalf of the members of the Subclass against Defendant.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    11

41.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations regarding its Product.

42.     The foregoing deceptive acts and practices were directed at consumers.

43.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent that the Product is capable of being composted.

44.     Plaintiff and members of the Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

45.     On behalf of himself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

### COUNT II
**Violation Of New York's Gen. Bus. Law § 350**
**(On Behalf Of The New York Subclass)**

46.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.     Plaintiff brings this claim individually and on behalf of the members of the Subclass against Defendant.

48.     Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the qualities and characteristics of the Product.

49.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

50.     These misrepresentations have resulted in consumer injury or harm to the public interest.

51.   Defendant alone possessed the knowledge that the Product was not capable of being composted.

52.   As a result of Defendant's misrepresentations, Plaintiff and members of the Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

53.   On behalf of himself and other members of the Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

**COUNT III**
**Breach Of Express Warranty**
**(On Behalf Of The Class And The New York Subclass)**

54.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

56.   This claim is brought under the laws of the States of California (as to the Class) and New York (as to the Subclass).

57.   Defendant, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Product was "compostable" and "certified compostable," and therefore capable of being composted.

58.   In fact, the Product is not fit for such purposes because the Product is not capable of being composted.

59.   As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class and Subclass members have been injured and harmed because they would not have purchased the Product, or would have paid substantially less for it, if they had known that the Product was not capable of being composted.

60.    On October 18, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**COUNT IV**
**Breach of Implied Warranty**
**(On Behalf Of The Class And The New York Subclass)**

61.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

63.    This claim is brought under the laws of the State of California (as to the Class) and New York (as to the Subclass).

64.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Product, impliedly warranted that the Product was capable of being composted.

65.    Defendant breached the warranty implied in the contract for the sale of the defective Product because it could not pass without objection in the trade under the contract description, the Product was not of fair or average quality within the description, and the Product was unfit for its intended and ordinary purpose because the Product manufactured by Defendant was not capable of being composted.  As a result, Plaintiff and Class and Subclass members did not receive the goods as impliedly warranted by Defendant to be merchantable.

66.    Plaintiff and Class and Subclass members purchased the Product in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

67.     The Product was not altered by Plaintiff or Class and Subclass members.

68.     The Product was defective when it left the exclusive control of Defendant.

69.     Defendant knew that the Product would be purchased and used without additional testing by Plaintiff and Class and Subclass members.

70.     The Product was unfit for its intended purpose, and Plaintiff and Class and Subclass members did not receive the goods as warranted.

71.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class and Subclass members have been injured and harmed because: (a) they would not have purchased the Product on the same terms if they knew that the Product was not capable of being composted; and (b) the Product does not have the characteristics, uses, or benefits as promised by Defendant.

72.     On October 18, 2021, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiff's counsel sent Defendant a letter advising that Defendant breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as **Exhibit 1**.

**COUNT V**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf Of The Class And The New York Subclass)**

73.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

75.     The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                          15

1     76.    Plaintiff and the Class and Subclass members are consumers as defined

2  in 15 U.S.C. § 2301(3).

3     77.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4)

4  and (5).

5     78.    In connection with the marketing and sale of the Product, Defendant

6  expressly and impliedly warranted that the Product was capable of being composted.

7  The Product was not capable of being composted as described in the allegations

8  above.

9     79.    By reason of Defendant's breach of warranties, Defendant violated the

10  statutory rights due Plaintiff and members of the Class and Subclass pursuant to the

11  Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging

12  Plaintiff and members of the Class and Subclass.

13     80.    Plaintiff and members of the Class and Subclass were injured as a direct

14  and proximate result of Defendant's breach because they would not have purchased

15  the Product if they knew the Product was not capable of being composted, and the

16  "compostable" and "certified compostable" claims were therefore false and

17  misleading.

18  **<u>COUNT VI</u>**<br>**Unjust Enrichment**<br>**(On Behalf Of The Class And The New York Subclass)**

19

20     81.    Plaintiff incorporates by reference the allegations contained in all

21  proceeding paragraphs of this complaint.

22     82.    Plaintiff brings this claim individually and on behalf of members of the

23  Class and Subclass against Defendant.

24     83.    This claim is brought under the laws of the States of California (as to the

25  Class) and New York (as to the Subclass).

26     84.    Plaintiff and Class and Subclass members conferred benefits on

27  Defendant by purchasing the Product.

28     85.    Defendant has knowledge of such benefits.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED       16

86.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class and Subclass members' purchases of the Product. Retention of moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Product was capable of being composted and charged a price premium based on those representations.

87.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class and Subclass members for their unjust enrichment, as ordered by the Court.

## COUNT VII
### Negligent Misrepresentation
### (On Behalf Of The Class And The New York Subclass)

88.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

90.     This claim is brought under the laws of the States of California (as to the Class) and New York (as to the Subclass).

91.     As discussed above, Defendant misrepresented that the Product was capable of being composted.

92.     At the time Defendant made these representations, Defendant knew or should have known that this representation was false or made it without knowledge of the representation's truth or veracity.

93.     At an absolute minimum, Defendant negligently misrepresented material facts about the Product.

94.     The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably

1  relied, were intended to induce, and actually induced Plaintiff and Class and Subclass

2  members to purchase the Product.

3      95.    Plaintiff and Class and Subclass members would not have purchased the

4  Product, or would have paid substantially less for it, if the true facts had been known.

5      96.    The negligent actions of Defendant caused damage to Plaintiff and Class

6  and Subclass members, who are entitled to damages and other legal and equitable

7  relief as a result.

8                                  **COUNT VIII**
                                   **Fraud**
9              **(On Behalf Of The Class And The New York Subclass)**

10     97.    Plaintiff incorporates by reference the allegations contained in all

11  preceding paragraphs of this complaint.

12     98.    Plaintiff brings this claim individually and on behalf of the members of

13  the proposed Class and Subclass against Defendant.

14     99.    This claim is brought under the laws of the States of California (as to the

15  Class) and New York (as to the Subclass).

16     100.   As discussed above, Defendant provided Plaintiff and Class and

17  Subclass members with false or misleading material information about the Product,

18  including but not limited to the fact that the Product was capable of being composted.

19     101.   These misrepresentations were made with knowledge of their falsehood.

20     102.   The misrepresentations made by Defendant, upon which Plaintiff and

21  Class and Subclass members reasonably and justifiably relied, were intended to

22  induce, and actually induced Plaintiff and Class and Subclass members to purchase

23  the Product.

24     103.   The fraudulent actions of Defendant caused damage to Plaintiff and

25  Class and Subclass members, who are entitled to damages and other legal and

26  equitable relief as a result.

27

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;
(f)    For an order of restitution and all other forms of equitable monetary relief;

(g)    For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h)    For an order awarding Plaintiff and the Class and Subclass their reasonable attorney's fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated:  November 29, 2021                        Respectfully submitted,

                                                **BURSOR & FISHER, P.A.**

                                                By:    */s/ Brittany S. Scott*
                                                        Brittany S. Scott

                                                L. Timothy Fisher (State Bar No. 191626)
                                                Brittany S. Scott (State Bar No. 327132)

1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
           bscott@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT 1**

# BURSOR & FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

MAX ROBERTS
Tel: 646.837.7408
Fax: 212.989.9163
mroberts@bursor.com

October 18, 2021

*__Via Certified Mail - Return Receipt Requested__*

beyondGREEN biotech, Inc.
Attn: Legal Department
1202 E. Wakeham Avenue
Santa Ana, CA 92705

beyondGREEN biotech, Inc.
c/o Melissa Centeno
3719 Beverly Ridge Drive
Sherman Oaks, CA 91423

*Re:*   *Notice and Demand Letter Pursuant to U.C.C. § 2-607,*
        *New York General Business Law §§ 349-50,*
        *and all other state and local laws*

This letter serves as a preliminary notice and demand for corrective action by beyondGREEN biotech, Inc. ("You") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties, as well as numerous provisions New York law—including but not limited to New York General Business Law §§ 349 and 350—on behalf of our client Basheer Bergus, and a class of all similarly situated purchasers of beyondGREEN Compostable Poop Bags (collectively, the "Products"). This letter provides statutory notice of our intent to file a class action lawsuit.

Our client purchased the Product, which You repeatedly misrepresented and warranted as being "compostable." Our client understood this to mean that his Product would be compostable. However, pet waste isn't compostable in municipal or industrial facilities due to the risk of contamination. Further, compostable waste bags will not break down in landfills due to lack of sunlight, moisture, and oxygen which inhibits degradation. Indeed, the Federal Trade Commission warns that "compostable" claims on pet waste bags are "generally untrue" and violate federal regulations. Therefore, contrary to Your express representations, the Products are not "compostable." Accordingly, our clients and similarly situated consumers were injured by purchasing the Products, because they would not have purchased the Products had they known the Products were not compostable. Such acts are in violation of Your express and implied warranties, as well as New York General Business Law §§ 349 and 350.

On behalf of our client and the Class, we hereby demand that You immediately (1) cease and desist from falsely representing that the Products are compostable and (2) make full restitution to all purchasers of the Products of all purchase money obtained from sales thereof.

BURSOR&FISHER
P.A.

We also demand that You preserve all documents and other evidence which refer or relate to any of the above-described practices during the applicable class periods, including electronically stored information and including, but not limited to, the following:

1. All documents concerning the packaging, labeling, testing, and manufacturing process for the Products;

2. All documents concerning the pricing, advertising, marketing, and/or sale of the Products;

3. All communications with customers involving complaints or comments concerning theProducts;

4. All documents concerning communications with any retailer involved in the marketing orsale of the Products;

5. All documents concerning communications with any suppliers involved in themanufacturing or sale of the Products; and

6. All documents concerning the total revenue derived from sales of the Products.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take this as an indication that you are not interested in discussing this offer of resolution.

Very truly yours,

*Max Roberts*

Max Roberts